**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **Olivia Brown,** | **Case No. 1:24-cv-01920-PAB** |
| **Plaintiff,** | |
| **-vs-** | |
| | **JUDGE PAMELA A. BARKER** |
| **Fairview Hospital, et al.,** | |
| **Defendants.** | **MEMORANDUM OPINION & ORDER** |

Currently pending before the Court is Defendants Fairview Hospital and The Cleveland Clinic Foundation's (collectively, "Defendants or the "Cleveland Clinic") Motion for Summary Judgment. (Doc. No. 18.)  Plaintiff Olivia Brown ("Brown") filed her Opposition on March 24, 2026, to which Defendants filed their Reply on April 22, 2026.  (Doc. Nos. 29, 31.)  For the following reasons, Defendants Motion for Summary Judgment is GRANTED.

## I.     Background

The following facts are undisputed.

### A.     Brown pleads guilty to a felony in 2012

In 2012, Brown pled guilty to a felony in Missouri related to a theft at a store where she was working at the time. (Brown Dep. 11:11–22, 12:15–17, 46:3–15.)   Although Brown pled guilty, she was never convicted of any crime related to the theft.  (Brown Dep. 37:25–38:5.)  Instead, she was given probation that suspended the imposition of her sentence.  (Brown Dep. 12:1–17.)  Brown accordingly was never "convicted" of a felony despite pleading guilty to a felony.  (Doc. No. 19-3, PageID #378.)

**B.      Brown provides false information to the Cleveland Clinic in 2018**

About six years later, in February 2018, Brown applied for a job with the Cleveland Clinic as a specimen transporter.  (Brown Dep. 43:24–44:12.)  As part of her application, Brown was asked the following question:

> Have you ever been convicted of, or pled guilty to, any felonies?  A "yes" response will not automatically disqualify you from consideration.

(Doc. No. 18-1, PageID #135.)  Despite having pled guilty to a felony, Brown answered "no" to this question.  (*Id.*; Brown Dep. 46:3–15).)

In March 2018, the Cleveland Clinic made a conditional offer of employment to Brown, which was contingent upon a background check.  Brown accepted the offer and began her employment in April 2018.  (Doc. No. 11, ¶¶ 23–24.)  Despite conducting the background check, at that time, the Cleveland Clinic was unaware that Brown submitted false information with her application.  (Doc. No. 18-1, ¶ 21.)

**C.      Brown works for the Cleveland Clinic for five years and takes FMLA leave**

Between April 2018 and February 2023, Brown worked for the Cleveland Clinic in various roles.  (Doc. No. 18-1, ¶ 8.)  During that same time, Brown applied for significant FMLA leave, which was always approved by the Cleveland Clinic.  (Brown Dep. 75:5–76:12, 83:6–84:6, 88:13–89:5, 93:3–98:13, 99:17–100:7.)  Then, in the Fall of 2022, Brown became pregnant.  (Brown Dep. 108:12–109:21.)  As a result, Brown requested specific accommodations, which were approved by the Cleveland Clinic.  (*Id.*)

Prior to giving birth, Brown applied for an anesthesia technician position at the Cleveland Clinic's Beachwood Surgery Center.  (Brown Dep. 71:8–15, Doc. No. 18-1, ¶ 8.)  This position required that Brown be fingerprinted to qualify for the job, which also triggered a background check.

2

(Tyler Dep. 16:24–17:22.)  The Cleveland Clinic ultimately offered Brown the job, and Brown started as an anesthesia technician on February 19, 2023.  (Doc. No. 11, ¶ 11.)  While employed as an anesthesia technician, Brown was initially supervised by Melissa Bacon ("Bacon") and then by Leah Peterson ("Peterson").  (Brown Dep. 122:4–123:2; Doc. No. 18-3, ¶ 4.)

Then, Brown applied, was approved for maternity leave from March 20, 2023 through June 11, 2023.  (Brown Dep. 118:14–21.)

**D.**     **In March 2023, the Cleveland Clinic discovers that Brown provided false information with her 2018 application**

In March 2023, around the same time that Brown took her maternity leave, the Cleveland Clinic discovered that Brown had provided false information on her 2018 application.  (Doc. No. 18-1, ¶¶ 10, 11.)  It made this discovery based upon records that it had received from the fingerprinting of Brown.  (*Id.*)   The inspector in charge of the fingerprinting and a "talent acquisition" employee brought this discovery to the attention of the human resources department.  (*Id.* at ¶ 9.)

HR Generalist Courtney Tyler ("Tyler") investigated the matter.  (Tyler Dep. 18–19.)  As part of her investigation, Tyler reviewed several documents, including a 2018 FBI Rap Sheet Report and a 2023 FBI Rap Sheet Report.  (Doc. No. 18-1, ¶¶ 13–14.)  Both FBI Rap Sheets show Brown's felony charge and list the disposition as "Guilty – SIS."  (Doc. No. 18-1, PageID #128, 134.)  Tyler also spoke with Brown regarding the 2012 felony charge.  (Brown Dep. 123:12–124:19; Doc. No. 18-1, ¶ 18.)  Tyler also discovered that while the 2018 FBI Rap Sheet showed the 2012 felony charge, it was not brought to human resource's attention in 2018.  (Doc. No. 18-1, ¶¶ 15–16.)  Based upon her investigation, Tyler determined that Brown had lied on her 2018 application.  (Doc. No. 18-1, ¶ 20.)

3

**E.      The Cleveland Clinic terminates Brown's employment**

Tyler concluded that had Brown violated the Cleveland Clinic's Corrective Action policy. (Tyler Dep. 20:9–17.)  The Corrective Action policy lists "[f]alsification of any official patient, origination, or employee records" as one of many "[m]ajor infractions, those of a severe nature [that] will subject an employee to corrective action usually resulting in a Step 3, Final Written Warning or a Step 4, Termination."  (Doc. No. 27-2, PageID #737.)  The policy further provides that:

> Employees who fail to abide by established standards and rules may be subject to corrective action. The step of corrective action may vary depending upon the nature of the infraction, the circumstances surrounding the offense and the employee's past records. Although employment may be terminated at-will at any time, without following any formal system of discipline or warning, forms of discipline that are less severe than termination may be utilized.

(*Id.* at PageID #738.)  Based upon this violation, the Cleveland Clinic determined that discharge was appropriate.  (Peterson Dep. 18:25–19:3; Bacon Dep. 23:24–24:2.)

On June 12, 2023, Brown returned from maternity leave.  (Doc. No 11, ¶ 46.)  The next day, on June 13, 2023, the Cleveland Clinic informed Brown that her employment was terminated.  (Doc. No 11, ¶ 51.)  Although the Cleveland Clinic terminated Brown's employment, she was encouraged to reapply for the position.  (Tyler Dep. 21; Brown Dep. 132).  Brown applied for several new positions with the Cleveland Clinic, but did not apply for an anesthesia technician job.  (Doc. No. 18-1, ¶ 23.)  The Cleveland Clinic did not offer Brown employment for any of the positions for which she applied.  (Brown Dep. 166–67.)

**F.      Brown files suit against the Cleveland Clinic and Fairview Hospital**

This civil action followed.  On November 1, 2024, Brown filed her Complaint.  (Doc. No 1.)  Therein, Brown brings the following claims:  (1) FMLA retaliation (Count I), (2) gender discrimination under federal law (Count II), and (3) gender discrimination under Ohio law (Count

4

III).  (*Id.*)  On January 10, 2025, Defendants filed their Answer to the Complaint.

The case proceeded through discovery, and on February 9, 2026, Defendants filed their Motion for Summary Judgment.  (Doc. No. 18.)  Brown filed her Opposition on March 24, 2026.  (Doc. No. 29.)  Defendants filed their Reply on April 22, 2026.  (Doc. No. 31.)  Accordingly, Defendants' Motion for Summary Judgment is ripe for review.

## II.     Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party."  *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006).  "Thus, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'"  *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  A fact is "material" only "if its resolution might affect the outcome of the suit under the governing substantive law."  *Henderson*, 469 F.3d at 487.  At the summary judgment stage, "[a] court should view the facts and draw all reasonable inferences in favor of the non-moving party."  *Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619, 628 (6th Cir. 2018).  In addition, "the moving party bears the initial burden of showing that there is no genuine dispute of material fact."  *Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 506, 508 (6th Cir. 2014).  The moving party may satisfy this initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact."  *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 764 (6th Cir. 2008).  "[I]f the moving party seeks summary judgment on an issue

for which it does not bear the burden of proof at trial," the moving party may also "meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'" *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the moving party satisfies its burden, "the burden shifts to the non-moving party who must then point to evidence that demonstrates that there is a genuine dispute of material fact for trial." *Ask Chems*., 593 F. App'x at 508–09. "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'" *MISC Berhad v. Advanced Polymer Coatings, Inc*., 101 F.Supp.3d 731, 736 (N.D. Ohio 2015) (quoting *Cox*, 53 F.3d at 150).

## III.    Analysis

The parties agree that Brown's claims are governed by the *McDonnell Douglas* burden shifting framework. The Court is familiar with the *McDonnell Douglas* burden shifting framework and will not repeat it herein.  *See*, *e.g.*, *Lott v. Playhouse Square Hotel*, No. 1:20-cv-1515,  2021 U.S. Dist. LEXIS 162152, at *21–22 (N.D. Ohio Aug. 27, 2021) (Barker, J.); *Lloyd v. Greater Cleveland Reg'l Transit Auth.*, No. 1:18-CV-01557, 2020 U.S. Dist. LEXIS 155826, at *36 (N.D. Ohio Aug. 27, 2020) (Barker, J.).  Defendants argue that Brown cannot establish a prima facie case of either FMLA retaliation or gender discrimination, and even if she could, Brown cannot establish pretext. Brown, of course, takes the opposite position.  As explained in detail below, the Court agrees with Defendants and grants summary judgment in their favor on Brown's claims.

### A.    Defendants are entitled to summary judgment on Brown's FMLA claim

The Court first addresses Brown's FMLA claim.  Even assuming Brown can establish a prima

facie case,[1] the Court finds that Brown cannot establish that Defendants' proffered reason for terminating her was pretextual.

Defendants argue that "discharge[ing] Plaintiff because she lied on her original employment application" is a legitimate, non-discriminatory reason for her discharge.  (Doc. No. 18, PageID #103.)  Defendants further argue that "Plaintiff cannot demonstrate pretext by any means."  (*Id.* at PageID #104.)  They assert that "[n]ot only did the Clinic honestly believe that Plaintiff lied on her application – it was correct. Plaintiff pled guilty to the 2012 Missouri felony."  (*Id.* at PageID #104.)  Defendants next assert that "the Clinic consistently explained that it discharged Plaintiff for lying on her application" and that "[t]he Clinic granted every request submitted and allowed Plaintiff to use significant amounts of FMLA leave."  (*Id.* at PageID #105.)  Defendants further assert that "through its consistent practices, the Clinic has demonstrated that falsifying application-related information is sufficient for termination."  (*Id.* at PageID #107.)

---

[1] Defendants only dispute the fourth element. (Doc. No. 18, PageID #100.)   Brown argues, among other things, that "[t]he temporal proximity between the FMLA leave and the adverse employment action at the very least creates an inference that the actions would not have been taken absent Brown's taking of FMLA." (Doc. No. 29, PageID #760.) Generally, "case law from this circuit cautions about the permissibility of drawing an inference of causation from temporal proximity alone." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010) (citing cases). But "[t]his Circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283 (6th Cir. 2012) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004)).  "In such cases, the adverse employment action is often taken just days or weeks from when the employer learns of the employee's protected activity." *George v. Youngstown State Univ.*, 966 F.3d 446, 460 (6th Cir. 2020) (citing cases).

In *Seeger*, for example, the Sixth Circuit held that "the nearness in time between [plaintiff's] return from FMLA leave and his termination — three weeks after his reinstatement and less than two months after he first notified [his employer] of his medical leave — suffices in these circumstances to meet the low threshold of proof necessary to establish a prima facie case of retaliatory discharge." *Seeger*, 681 F.3d at 283. *Seeger* suggests that Brown can make a prima facie case here.  Brown was terminated just two days after her reinstatement and about three months after she requested leave after she gave birth to her child. *See also Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) ("Here, Regis terminated Bryson on March 10, 2004, three months after Bryson requested FMLA leave, and the very day that she was scheduled to return to work. We have previously held that proximity in time between the protected activity and the adverse employment action may constitute evidence of a causal connection").  But the Court does not need to decide this issue today because, as explained below, the Court finds that Brown cannot establish pretext.

In her Opposition, Brown argues that Defendants' decision had no basis in fact and was insufficient to warrant termination.  As to the former, Brown argues that "Defendants asserted to Brown that the reason for her termination was related to lying on her application that she did not have a felony conviction on her record," but "Brown [does] not have a felony conviction on her record." (Doc. No. 29, PageID #763.)  Brown asserts that "Defendants had the FBI rap sheet in their possession prior to Brown's termination—a rap sheet that explicitly stated that Brown's felony charge was not a conviction." (*Id.*)  As to the latter, Brown argues that "Defendants own corrective action policy states that 'major infractions' do not require termination," that "the corrective action policy states that even major infractions can be addressed with a written warning prior to termination," and that "nowhere in the policy does it provide that infractions regarding background checks require termination." (*Id.* at PageID #764.)

In their Reply, Defendants argue that "Ms. Tyler stated under oath that she recommended Plaintiff's discharge, and did so because Plaintiff lied by failing to disclose the felony on her background." (Doc. No. 31, PageID #983.)  They assert, however, that "[d]espite Plaintiff's repeated attempts to create non-existent testimony, Ms. Tyler did not utter the word 'conviction' or phrase 'felony conviction' once, let alone testify that she recommended discharge because Plaintiff lied about a felony conviction." (*Id.*)  Defendants further assert that, as to the basis for Brown's termination, Peterson testified that "I was told that she checked no to pleading guilty or being convicted of a felony but she had been," and Bacon testified that she "was told [that Brown] did not check a box stating about a previous felony." (*Id.*)  Defendants further assert that "the documents in the record evidence similarly refute Plaintiff's claim that the Clinic discharged her because it believed she lied about having a felony conviction." (*Id.* at PageID #983–84.)  Defendants also argue "that

the undisputed record evidence makes clear that the Clinic made a reasonably informed and considered decision before discharging Plaintiff" and that "the Clinic honestly believed Plaintiff lied on her original application." (*Id.* at PageID #984–85.)  Defendants' final argument is that Plaintiff cites "the Clinic's corrective action policy," but "doing so ignores the undisputed record evidence that shows the Clinic's uniform application of its policy – falsification of application-related information justifies discharge." (*Id.* at PageID #986.)

"Plaintiffs ordinarily show pretext 'by showing that the proffered reason[] had no basis in fact; (2) was insufficient motivation for the employment action; or (3) did not actually motivate the adverse employment action.'"  *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 515 (6th Cir. 2021) (quoting *Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 790–91 (6th Cir. 2006)).  "This burden is not heavy, though, as summary judgment is warranted only if no reasonable juror could conclude that the employer's offered reason was pretextual."  *George v. Youngstown State Univ.*, 966 F.3d 446, 462 (6th Cir. 2020) (citing *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 620 (6th Cir. 2006); *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 547–48 (6th Cir. 2004)).  Brown argues that the first two categories of pretext are present here.  The Court disagrees as explained below.

> **1.      No reasonable juror could conclude that Defendants' proffered reason for terminating Brown had no basis in fact.**

The Court finds that no reasonable juror could conclude that Defendants' proffered reason for terminating Brown had no basis in fact.  Brown does not dispute that she pled guilty to a felony and that she should have answered the "[h]ave you ever been convicted of, or pled guilty to, any felonies?" question on her 2018 application with a "yes." (Brown Dep. 37:25–38:5.)  And Brown testified that Defendants told her that she was fired for "falsification of information."  (Brown Dep. 131:9–21.)

Consistent with Brown's testimony, both of Brown's supervisors testified that they were told the basis for terminating Brown was falsification of information.  (Bacon Dep. 23:24–24:2 (Q: "What was communicated to you was the break in policy?" A: "The fraudulent -- lying on the original application, which was fraudulent personnel records"); Peterson Dep. 18:25–19:3 (Q: "And what's your understanding of the reasoning for the termination?" A: "Falsification of information on her application"); *see also* Doc. No. 21-4 (listing the basis for Brown's termination as "falsification of any official patient, organization, or employee records").)  Simply put, the record undisputedly shows that Brown did not accurately fill out her 2018 application and that was the basis for her termination.

Tyler's testimony does not move the needle in Brown's favor.  Defendants correctly point out that Tyler never testified that lying about a *conviction* was the basis for Brown's termination.  But when construing her testimony in Brown's favor, as the Court must do, Tyler may have actually believed Brown had a felony *conviction* on her record.   In an email to Peterson and Bacon, Tyler wrote "[a]ccording to Inspector Cooper, he believes [Inspector] Kwiat saw the felony. However, the felony would have not prohibited her from starting at the Clinic.  The fact she lied on her application, stating she did not have a felony, should have though."  (Doc. No. 27-3, PageID #742–43.)  Tyler testified that the "lie" referred to in this email "was that [Brown] did in fact have a felony."  (Tyler Dep. 32:23–33:2.)

But this evidence does not lead to a conclusion that Defendants' decision had no basis in fact.  Regardless of whether Tyler believed Brown had a felony conviction or merely pled guilty to a felony, Defendants' conclusion would have been correct—Brown provided false information with her 2018 application.   Accordingly, even assuming Tyler mistakenly believed that Brown had a felony conviction, Defendants proffered reason for terminating Brown (falsification of information) had a

10

basis in fact, and no reasonable juror could conclude otherwise.

Moreover, the Court finds that even if Tyler thought Brown had a felony conviction, Defendants would be protected by the honest belief rule. "Under the honest belief rule, a pretext argument falling into the first category—asserting that the reason given by the employer has no basis in fact—may be defeated by conclusive evidence that the defendant honestly believed its proffered reason, and that the belief was reasonably based on particularized facts that were before it at the time the decision was made." *Briggs*, 11 F.4th at 515 (quotations omitted).  Based on the record before the Court, the Court finds that Defendants conducted a reasonable investigation.  The Court finds that Defendants, after conducting their reasonable investigation, discovered that both the 2018 and 2023 FBI Rap Sheets showed Plaintiff's felony charge and listed the disposition as "Guilty – SIS." Regardless of the legal status of whether Plaintiff was convicted, Defendants could reasonably conclude, based on this information, that Plaintiff lied when she answered "no" to the question "[h]ave you ever been convicted of, or pled guilty to, any felonies?"  At the end of the day, the outcome of Defendants' investigation was the correct result—Brown falsified information on her application.

For all these reasons, the Court finds that no reasonable juror could conclude that Defendants' proffered reason for terminating Brown had no basis in fact.

### 2. No reasonable juror could conclude that Defendants' proffered reason for terminating Brown was insufficient motivation for the employment action

The Court also finds that no reasonable juror could conclude that Defendants' proffered reason for terminating Brown was insufficient motivation for the employment action.  Brown's reliance on the Corrective Action policy does not create a triable issue.  The Corrective Action policy lists "[f]alsification of any official patient, origination, or employee records" as one of many "[m]ajor

11

infractions, those of a severe nature will subject an employee to corrective action ***usually resulting*** in a Step 3, Final Written Warning or a Step 4, ***Termination***.”  (Doc. No. 27-2, PageID #737 (emphasis added).)  This language suggests that falsification, by itself, could result in termination. The policy further provides that:

> Employees who fail to abide by established standards and rules may be subject to corrective action. The step of corrective action may vary depending upon the nature of the infraction, the circumstances surrounding the offense and the employee's past records. ***Although employment may be terminated at-will at any time, without following any formal system of discipline or warning, forms of discipline that are less severe than termination may be utilized***.

(*Id.* at PageID #738 (emphasis added).)  This language suggests that the Defendants could terminate Brown's employment for any reason without resorting to lesser means (such as issuing a warning) first.

Defendants, accordingly, complied with the Corrective Action policy when they decided to terminate Brown without a warning.   Moreover, Defendants have introduced undisputed evidence that, in 2023, they terminated four other employees who falsified information on their employment application.  Accordingly, Defendants' treatment of Brown was consistent with how they treated other employees who submitted false information with their employment applications.  The Court accordingly finds that Plaintiff's reliance on the Corrective Action policy is insufficient to establish pretext.

In sum, Plaintiff has not submitted evidence sufficient to create a triable issue on the issue of pretext.  Accordingly, Defendants are entitled to summary judgment on Brown's FMLA claim.

**B.** **Defendants are entitled to summary judgment on both of Brown's gender-discrimination claims**

The Court next turns to Brown's gender-discrimination claims and the Court finds that they

12

fail at the prima facie stage. To make out a claim for gender discrimination, under either Ohio or federal law, Brown must establish that she (1) is a member of a protected class, (2) was qualified for her job, (3) suffered an adverse employment decision, and (4) was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees. *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606–07 (6th Cir. 2019) (citing *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008)); *Lloyd*, 2020 U.S. Dist. LEXIS 155826 at *35–36 (finding that "claims under Title VII and Ohio law may be analyzed together" because "Ohio's requirements [for gender discrimination claims] are the same as under federal law") (internal quotations omitted).[2]

Defendants only challenge the fourth element. In their Motion, Defendants argue that "Plaintiff cannot meet her burden because she cannot show that similarly situated employees were treated more favorably than her." (Doc. No. 18, PageID #101.) Defendants assert that "numerous pregnant employees working under the supervision of Ms. Bacon and Ms. Peterson have taken maternity leave and not been discharged." (*Id.* at PageID #102.) According to Defendants, seven employees took full maternity leave under Bacon and Peterson's supervision and that "[a]ll seven of these employees either remain currently employed by the Clinic or voluntarily resigned at some point

---

[2] Although the Court does not have original jurisdiction over Brown's state law claim for gender discrimination, the Court will exercise supplemental jurisdiction over that claim because it is "so related to claims in the action within [the Court's] original jurisdiction that [it] form[s] part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Further, the Court finds that 28 U.S.C. § 1367(c) does not require that Court to decline to exercise supplemental jurisdiction over Brown's state law claim because (i) it does not raise novel or complex issues of state law, (ii) it does not substantially predominate over the claims over which the Court has original jurisdiction, and (iii) there are no compelling reasons for declining jurisdiction. *See* 28 U.S.C. § 1367(c); *see also Veneklase v. Bridgewater Condos, L.C.*, 670 F.3d 705, 716 (6th Cir. 2012) ("the default assumption is that the court will exercise supplemental jurisdiction over all related claims") (quoting *Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 892 (6th Cir. 1998)).

after their maternity leave ended." (*Id.*) Defendants then argue that "the Clinic has discharged non-pregnant employees for the exact same reason it terminated Plaintiff's employment." (*Id.*) They assert that "[i]n 2023 alone, the Clinic discharged at least four other employees at Fairview or Beachwood based upon their falsification of application-related information," which includes "one employee who sought a transfer and lied on the felony conviction/guilty plea question." (*Id.*)

Brown argues in her Opposition that "there is no evidence that the employee who replaced Brown was pregnant or took maternity leave during her employment." (Doc. No. 29, PageID #765.) She asserts that "prior to Brown going on leave, employees made negative comments regarding the length of Brown's maternity leave." (*Id.*) Brown concludes that "[b]ecause Brown was not replaced with another pregnant woman, Brown has met her burden in establishing that she was discriminated against based on her gender." (*Id.*)

Defendants argue in their Reply that "Plaintiff bears the burden of establishing this element," but "cites no record evidence to support [her] contention" that "she 'was not replaced with another pregnant employee.'" (Doc. No. 31, PageID #981.) They then argue that "Plaintiff's allegation that another employee made a comment about her leave similarly lacks merit or support in the record." (*Id.*)

The Court agrees with Defendants. Brown's sole argument is that she was replaced by someone outside her protected class,[3] but she has not presented any evidence on this issue. First, the alleged comments regarding Brown's maternity leave are based upon speculation. Defendants correctly point out that Brown could not recall who made the comments and testified that neither

---

[3] Brown does not argue that she was treated differently than similarly situated non-protected employees. And she does not dispute Defendants' evidence showing that seven pregnant employees under Bacon and Peterson's supervision were not fired, and that Defendants have fired people for the same reason they fired Brown.

14

Bacon nor Peterson made the comments.  Plaintiff's speculative testimony concerning these alleged comments is simply insufficient.  *See*, *e.g.*, *Grizzel v. City of Columbus Div. of Police*, 461 F.3d 711, 724 (6th Cir. 2006) ("It is well settled that '[m]ere personal beliefs, conjecture and speculation are insufficient to support an inference of [] discrimination'") (quoting *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997)); *see also Lomax v. Sears, Roebuck & Co.*, No. 99-6589, 2000 U.S. App. LEXIS 33884, at *14 (6th Cir. Dec. 19, 2000) ("Lomax is left to rely on his own opinions and the hearsay statements of others in order to support this claim. Such conclusory allegations, improbable inferences, and unsupported speculation are insufficient to defeat summary judgment").

Second, Brown's contention that "there is no evidence that the employee who replaced Brown was pregnant or took maternity leave during her employment" is also based on speculation.  The record reflects that Brown was replaced by a woman named Diane Silvis.  (Luzar Dep. 30:18–25 (Q: Who filled that role? A: An internal candidate from – I forget where she was from.  Diane Silvis is her name").)  Brown has not introduced any evidence suggesting Ms. Silvis was, or was not, pregnant at the time she was hired.  In other words, Plaintiff has not introduced any evidence satisfying her burden to show that she was replaced by a person outside the protected class.  *See*, *e.g.*, *Nasrallah v. Robert Half Int'l Inc.*, No. 1:19-CV-00795, 2020 U.S. Dist. LEXIS 65150, at *22 (N.D. Ohio Apr. 14, 2020) ("the plaintiff faces the initial burden of presenting a prima facie case of unlawful discrimination") (Barker, J.).

For all these reasons, the Court finds that Brown cannot establish a prima facie gender-discrimination claim under federal or Ohio law.  Accordingly, Defendants are entitled to summary judgment on Brown's gender-discrimination claims.[4]

---

[4] But even if Brown could establish a prima facie claim, Defendants are entitled to summary judgment for an independent reason.  Even if Brown could set forth a prima facie gender discrimination claim, she cannot establish pretext.  Brown

## IV.     Conclusion

For the reasons set forth herein, Defendants' Motion for Summary Judgment (Doc. No. 18) is

GRANTED.

**IT IS SO ORDERED.**

       *s/Pamela A. Barker*       
       PAMELA A. BARKER
Date:  July 28, 2026       U. S. DISTRICT JUDGE

---

relies on the same evidence she relied on to establish pretext for her FMLA claim.  (Doc. No. 29, PageID #765.)  As explained above, this evidence is insufficient to create a triable issue on this issue of pretext.  Accordingly, Defendants are entitled to summary judgment on Brown's gender-discrimination claim for the separate reason that Brown cannot establish that Defendants' proffered reason for terminating her was pretextual.